

**FILED**
CLERK, U.S. DISTRICT COURT

JULY 27 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____RS_____ DEPUTY

1  Anoush Hakimi (SBN 228858)
2  anoush@handslawgroup.com
   Peter Shahriari (SBN 237074)
3  peter@handslawgroup.com
4  **THE LAW OFFICE OF HAKIMI & SHAHRIARI**
   1800 Vine Street
5  Los Angeles, CA 90028
6  Telephone: (888) 635-2250
   Facsimile: (213) 402-2170
7
8  Attorneys for Plaintiff-Relator,
   **RELATOR, LLC**
9

10           **UNITED STATES DISTRICT COURT**
11           **CENTRAL DISTRICT OF CALIFORNIA**

12                                    **2:22-CV-05200-FWS-GJSx**

13 **UNITED STATES OF AMERICA,**       Case No.

14          Plaintiff,

15 *ex rel.* **RELATOR LLC**, a California   **COMPLAINT FOR VIOLATIONS**
   limited liability company,         **OF FEDERAL FALSE CLAIMS**
16                                     **ACT**

17          Relator,                   **FILED *IN CAMERA* UNDER SEAL**
18     v.                              **PURSUANT TO 31 U.S.C. §**
                                       **3730(b)(2)**
19 **KENNETH D. HODGES**, an individual,
20 **ASSURANCE FINANCIAL GROUP,**      **DO NOT PLACE ON PACER**
   **LLC**, a Louisiana Limited Liability
21 Company; and DOES 1-10,
                                       **JURY TRIAL DEMANDED**
22          Defendants.
23
24
25

26      Plaintiff RELATOR LLC (hereinafter referred to as "Plaintiff") complains of

27 **KENNETH D. HODGES**, an individual, **ASSURANCE FINANCIAL GROUP,**
28

─────────────────────────────
                    COMPLAINT

**LLC**, a Louisiana Limited Liability Company; and DOES 1-10:

## I.    INTRODUCTION

1.    In this matter a company which was <u>prohibited</u> from taking PPP loans, as a lender, falsified documents to obtain millions from the PPP program, depriving other eligible businesses and workers of financial aid during a crises. Many Americans lost their jobs and deserving small businesses closed, because the money ran out. This company and its owner bilked the PPP program for millions of dollars. They were not allowed to take this money. They did not need it. They did not return it. Assurance Financial Group, LLC (*hereinafter* "AFG")[1] applied for and received a PPP loan for a **$3,603,800.00**, purportedly to cover payroll and mortgage costs, however this loan was <u>prohibited</u> because AFG is a <u>money lending</u> business and therefore *ineligible* to receive any PPP loans; and after receiving the loan AFG did not return the money, but rather obtained total loan forgiveness, foisting a multi-million dollar bill onto the American taxpayer.

2.    AFG took advantage of the PPP to raid government coffers. AFG was <u>ineligible</u> to receive any SBA loans whatsoever. The SBA has restricted a small number of specific industries from receiving loans, including mortgage lenders like AFG. The rationale is that large cash rich money lenders which have the resources to pay their own expenses and should not take financial resources from small

---

[1] AFG is a very lucrative and successful company which closed over  $ billion in deals just in 2020. AFG and its owner did NOT need any money from the US taxpayers.

COMPLAINT

businesses which actually need the loan. Defendant's business type is ineligible for SBA loans because they are **money lenders**.[2] Defendant's certification was <u>false</u> because **they <u>are</u> the type of business/industry which is prohibited from SBA loans**. AFG is a direct lender that provides loans to consumers, mostly for mortgages. They are clear on their website "Company Fact Sheet" that they are a "direct lender" and a mortgage banker.[3] AFG is active in 43 states and is says it is "continuing to aggressively expand its footprint to every thriving community within the country." This does not sound like a small business struggling to pay its staff. Rather, it sounds like an unscrupulous large company pressing its corporate greed.

3.    On its application, Defendant admits to its function as a *lender* by reporting its business type with the NAICS code 522292, which is for lending funds with real estate as collateral. They also proudly confirm that they are no longer brokers, but rather a "bank" and "direct lender" throughout their website which has a diagram of their company evolution. Despite this, the company falsely reported to the SBA that it was permitted to take the loan even though SBA has clear rules prohibiting loans to direct lenders.

4.    <u>Defendants Knew Their Loan Applications Were Illegal</u>. Defendants falsified their eligible business expenses on their applications. AFG is a sophisticated company with extensive history of the lending industry. They knew

---

[2] AFG is a direct lender. They specialize in home mortgage loans.
[3] "Direct lending is a form of corporate debt provision in which lenders other than banks

full well money lenders are not eligible to receive SBA 7(a) loans or PPP loans. Defendants ripped off a government aid program, needed by working families to survive.

5.   <u>Money Not Returned</u>. The loans were taken by a business which was not allowed to take even one penny in loans, let alone millions of dollars. The **$3,603,800.00** in funds should have been returned immediately. Not a penny has been returned. These loans should never have been sought in the first place.

6.   <u>Further Falsification on Loan Forgiveness</u>. Defendant's falsified further documents in order to receive total loan forgiveness, foisting the costs on the American taxpayer while depriving small businesses and their employees funding to stay open and working. They had to attest to the use of the funds and the amount used on authorized purposes. They lied on these documents and application also.

7.   <u>No Economic Necessity</u>. The rules explaining what the purpose of the loan are clear: to help struggling businesses pay their workers. There was no "need" or "economic necessity" to pay Defendant's payroll or mortgage expenses.[4] AFG cannot show any decline in revenue as a result of the pandemic. In fact, their profits

---

make loans to companies without intermediaries such as an investment bank, a broker or a private equity firm." https://en.wikipedia.org/wiki/Direct_lending
[4] They did not need the loans. They took advantage. AFG is not a small business in dire financial straits, but rather a well-financed finance company which was enjoying higher profits. Public information shows their revenue was not declining, and their own statements indicate massive growth and profits. Defendant cannot show "economic necessity" in needing the loans to continue business operations.

appeared to continue to increase during the pandemic. Defendants did not need the loan. They took advantage of the PPP program and used it as a windfall. AFG touts it closed over $2 billion in deals just in 2020, up from $1 billion in 2019. This company did NOT need any money from the PPP. AFG and its owner marauded the program to line his pockets.

8.     <u>Defendant's False Statements and Fraud</u>. Defendants knowingly and intentionally made many material false statements to the government and bank to obtain the loans.

9.     Defendants did in fact receive the loan. *The Defendants have not returned a penny*.

10.    Defendant used the loan for unauthorized purposes.

11.    Defendant then sought after and obtained total loan forgiveness. They could not have complied with the requirements of forgiveness given their business type, assuming the executive and CEO did not simply pocket the money.

12.    Defendants communication of false statements constitutes Wire Fraud pursuant to 18 U.S.C. Section 1343, which occurred when Defendants used "the wires" (this includes using the internet or the phone) to steal money by making false statements or promises.

13.    Defendant's communication of false statements also constitutes Bank Fraud (18 U.S.C. Section 1344) – by making false statements to a bank or other

financial institution.

14.     Defendants communicated in writing, deceptive statements, including without limitation, with respect to the eligibility of the company obtaining the loans, economic necessity of the loan, the intended purpose of the loan, and the actual use of the proceeds, among others.

15.     Plaintiff-Relator, Relator LLC on behalf of the United States of America brings this action to recover treble damages, civil penalties, and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover damages and other monetary relief under the common law and equitable theories of unjust enrichment and payment by mistake.

16.     This action arises from numerous false statements and claims that the Defendant knowingly presented to the United States and the United States Small Business Administration ("SBA") and lenders acting on the SBA's behalf, in violation of the FCA and common law.

17.     The Defendants unlawfully obtained millions of dollars of PPP Proceeds (as defined below), and failed to return or repay the money. In fact, they went further and obtained total loan forgiveness. The US taxpayer unfairly subsidized their profitable business, while deserving small businesses found they could not longer get loans because of businesses like AFG which drained the program.

COMPLAINT

18.    In summary, AFG used the pandemic to obtain millions of dollars from the government. They deceptively completed the SBA loan applications by seeking money for a business which they knew is INELIGIBLE to receive even 1 dollar of PPP loans, because it itself is a lender. The industry in which AFG belongs is expressly *prohibited* from receiving SBA loans generally and the PPP loan as well. They are a business with a multitude of lending operations. Defendant's stock in trade is money. Not only was the loan impermissible, but they obtained forgiveness. The loans were made because the government and SBA relied on the many false statements made by Defendants. AFG and its CEO Kenneth D. Hodges knew full well that they were making many false statements to the government and SBA. They knew full well that their active pursuit in seeking out this money was illegal, but they persisted and kept the money.

## II.    THE PARTIES

19.    Plaintiff-Relator LLC, is a California limited liability company with its principal place of business in Los Angeles, California.

20.    Defendant Kenneth D. Hodges, is an individual and, at all relevant times herein, is and was the Chief Executive Officer and director of Assurance Financial Group, LLC.

21.    Defendant Assurance Financial Group, LLC is a Louisiana Limited Liability Company, formed on May 29, 2001, with its principal place of business 9029 Jefferson Hwy., Ste. 100, Baton Rouge, LA 70809.

COMPLAINT

22. AFG is a mortgage lender which directly provides home loans to people across the country. They claim to be licensed in 47 states and closed $1 billion in deals in 2019 and over $2 billion in 2020, doubling their activity.

23. During round 1 of the paycheck protection program, Defendants applied for a PPP loan for **$3,603,800.00.** It was approved on July 7, 2020 by the SBA for the full amount, which was disbursed. The loan was facilitated by Origin Bank. Defendant received 100% of the approved amount. On its application for this loan, Defendant stated that it had 231 employees for which it needed the loan.

### III.    The CARES Act and Paycheck Protection Program

24. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

25. The CARES Act authorized loans to eligible small businesses struggling to pay employees and other business expenses as a result of the devastating effect of the COVID-19 pandemic.

26. Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck

Protection Program" ("PPP").

27.    On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) became law and provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) became law and changed key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

28.    Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

29.    The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.

COMPLAINT

30.     Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

31.     After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to Answer Yes to the following questions in the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General Eligibility to receive a PPP Loan:

| | | |
|---|---|---|
| • The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, | ☐ Yes | ☐ No |

COMPLAINT

| | covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | | |
|---|---|---|---|

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained the PPP borrower's False Statement.

32.    SBA Form 2483 provides the following certification, among others  "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (hereafter the "Understanding Certification").

33.    SBA Form 2483 provides the following certification, among others "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (hereafter the "Eligibility

COMPLAINT

Certification").

34.    SBA Form 2483 provides the following certification, among others "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (hereafter the "Use of Proceeds Certification")

35.    SBA Form 2483 additionally provides the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (hereafter the "Economic Necessity Certification").

36.    SBA Form 2483 additionally provides the following certification, among others: "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (hereafter the "Worker Retention and Payroll Certification.")

37.    SBA Form 2483 additionally provides the following certification, among others: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program." (hereafter the "Single Loan Certification.")

38.     SBA Form 2483 additionally provides the following certification, among others: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000" (hereafter the "No False Statements Certification").

39.     After the borrower submitted the PPP loan application, that application was then processed by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event that the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

40.     Under the applicable PPP rules and guidance, recipients of PPP loans could apply to have the interest and principal on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to

repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness Certification").

41.    Loans could only be used for certain permitted expenses, such as to fund payroll costs and employee benefits, such as health insurance, to pay for, mortgage interest, rent, utilities or worker protection costs related to COVID19.

42.    13 CFR§ 120.110 provides a list of what type of business are INELIGIBLE for SBA loans. This list includes money lenders like Defendant …

**"(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)"**

43.    On April 2, 2020, the SBA posted the First PPP Interim Final Rule announcing the implementation of the CARES Act. SBA posted additional interim final rules on April 3, 2020, and April 14, 2020. On April 28, 2020, SBA posted an interim final rule supplementing the previously posted interim final rules with additional guidance. See, Federal Register / Vol. 85, No. 82 / Tuesday, April 28, 2020 / Rules and Regulations at, 23450-52, available at

COMPLAINT

https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-for-Promissory-Notes-Authorizations-Affiliation-and-Eligibility.pdf. This interim final rule supplemented previous regulations and guidance on several important, discrete issues. The April 28, 2020, Interim Final Rule was immediately effective without advance notice and public comment because section 1114 of the CARES Act authorized SBA to issue regulations to implement Title I of the CARES Act without regard to notice requirements. *Id.*

44.    With respect to the PPP, the January 6, 2021, Interim Final Rule provided Clarification Regarding Eligible Businesses, specifically 13 CFR Parts 113, 120 and 121.

*"Are businesses that are generally ineligible for 7(a) loans under 13 CFR 120.110 eligible for a PPP loan?*

**Paragraphs (a), (g), and (k), of 13 C.F.R. 120.110 do not apply to PPP loans. For PPP loans, the ineligibility restriction in 13 C.F.R. 120.110(n) is superseded by subsection B.2.a.iii. of this interim final rule. Otherwise, a business is not eligible for a PPP loan if it is a type of business concern (or would be, if the entity were a business concern) described in 13 C.F.R. 120.110, except as permitted by subsections B.1.d and B.1.g of this rule or otherwise permitted by PPP rules. Businesses that are not generally eligible for a 7(a) loan under 13 C.F.R. 120.110 are described further in SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter**

1    45.    The SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A,

2  Chapter states as follows:

3

4                              **CHAPTER 3: INELIGIBLE BUSINESSES**

5        A. **TYPES OF INELIGIBLE BUSINESSES**

6        The SBA Lender must determine whether the Applicant is one of the types of businesses listed as
         ineligible in SBA regulations (13 CFR § 120.110). Certain business types appearing on this list
         may be eligible under limited circumstances, as discussed below.

7            1.  Businesses organized as non-profit businesses are ineligible (for-profit subsidiaries may
                be eligible). 13 CFR § 120.110 (a)

8            2.  Businesses Engaged in Lending 13 CFR § 120.110 (b).

9                  a.  SBA cannot guarantee a loan that provides funds to businesses primarily engaged
                       in lending, investment, or to an otherwise eligible business engaged in financing,
                       factoring, or investment not related or essential to the business. This prohibits
10                     SBA Loans to:

11                       i.   Banks;

12                       ii.  Life Insurance Companies (but not independent agents);

                         iii. Finance Companies;

13                       iv.  Factoring Companies;

                         v.   Investment Companies;

14                       vi.  Bail Bond Companies; and

                         vii. Other businesses whose stock in trade is money.

15                 b.  The limited circumstances under which certain businesses engaged in lending
                       may be eligible are as follows:

16                       i.   A pawn shop that provides financing is eligible if more than 50% of its
17                            revenue for the previous year was from the sale of merchandise rather than
                              from interest on loans.

18                       ii.  A business that provides financing in the regular course of its business (such
                              as a business that finances credit sales) is eligible, provided less than 50% of
19                            its revenue is from financing its sales.

                         iii. A mortgage servicing company that disburses loans and sells them within 14
20                            calendar days of loan closing is eligible. Mortgage companies primarily
                              engaged in the business of servicing loans are eligible. Mortgage companies
21                            that make loans and hold them in their portfolio are not eligible.

                         iv.  A check cashing business is eligible if it receives more than 50% of its
22                            revenue from the service of cashing checks.

23

24        Effective October 1, 2020                                             Page 141

25

26

27    46.    AFG is a money lender. They are clearly prohibited from receiving

28

COMPLAINT

SBA loans, especially PPP loans. AFG's CEO Kenneth Hodges, as a sophisticated businessman, would certainly have known this. The legal and financial experts in his large company, and hired by his company, would have known this. They broke these clear rules.

47.    Defendant's certification was false because **they _are_ the type of business/industry which is _prohibited_ from SBA loans**: **The Defendants are money lenders**.

48.    In addition to applying any applicable business type ineligibility rules, all borrowers should carefully review the required certification on the Paycheck Protection Program Borrower Application Form (SBA Form 2483) stating that ''[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.''

49.    AFG is a sophisticated, voraciously successful money lending business. Kenneth Hodges is a seasoned and cunning businessman, well versed in the laws regulating his industry. Discovery will reveal where the millions in PPP funds actually went, but certainly AFG did not _need_ any financial assistance. This business was lending other people money. Public sources reveal that AFG is highly profitable, and they themselves say: "the company closed $1billion in 2019 and over $2billion in 2020." AFG did not suffer any business loss and certainly had the money to pay their own mortgage and worker wages. AFG**'s** "stock in trade" is

money and business was booming. AFG simply ripped off the PPP program and had the US taxpayers subsidize their business, at best, subsidize their executive's luxury life styles, at worst.

### IV.    Defendants' False Statements and Misuse of Proceeds

50.    Defendants applied for and received the PPP Loans in the total amount of **$3,603,800.00**. In order to receive the loans, Defendants would have to have completed SBA Form 2483 entitled "Borrower Application Form". In doing so, Defendants intentionally made materially false statements with respect to the Eligibility Certification, the Use of Proceeds Certification, the Economic Necessity Certification, the Worker Retention and Payroll Certification, the No False Statements Certification and the Single Loan Certification.

51.    Defendants signed the loan applications, thereby endorsing the Understanding Certification, which means that they agreed that they understood the rules and guidelines of the PPP, including, without limitation the rules regarding use of proceeds and the certifications made.

52.    <u>Ineligible Industry</u>. The proceeds of the PPP Loan were not and could not have been used only for authorized purposes consistent with the Paycheck Protection Program Rule, because, among other things, the Defendant was not even allowed to take any PPP loans because of their industry (money lenders), therefore when Defendants made the Use of Proceeds Certification, the certification was false.

53.    <u>No Economic Necessity</u>. The proceeds of the PPP Loan were not necessary to support the ongoing operations of AFG. The company proudly states that it doubled its business, going from $1billion in closed deals in 2019 to $2billion in 2020. This company had considerable financial resources to pay its own business costs, assuming that is where the money was spent rather than into the pockets of Kenneth Hodges and his executives. Therefore, when Defendants made the Economic Necessity Certification, the certification was false.

54.    <u>Using PPP Loan in Unauthorized Way</u>. The PPP loan money was only allowed to be used on authorized expenses. The proceeds of the PPP Loan were not permitted to be used to retain workers and maintain payroll in the lending industry, therefore when Defendant made the Worker Retention and Payroll Certification, the certification was false.

55.    <u>False Statements Made In Forgiveness Documents</u>. The Defendants actively pursued and obtained total loan forgiveness. As a mortgage lender, AFG is prohibited from obtaining any PPP loans, therefore any expenditures using PPP loan money was not authorized. In their forgiveness application, Defendant's falsely reported that they spent 100% of the loan proceeds on eligible expenses. They lied on this application and certification statements to obtain this forgiveness.

56.    On their loan applications, Defendant intentionally made several key statements which were false and intended to deceive. These key false statements by

Defendant made it possible for them to get the loans.

57.    By virtue of the above false statements, when Defendants made the No False Statements Certification, that certification was false.

## V.    THE FALSE CLAIMS ACT

58.    Plaintiff alleges that, from at least April 28, 2020 through the time of the filing of this Complaint, Defendants violated the FCA by "knowingly" submitting and/or causing the submission of false claims for payment to lenders authorized by the SBA to process PPP loan applications in the form of PPP Applications and the resulting receipt and failure to return PPP loans. These claims for payment were false because Defendants: (1) made knowingly false statements and certifications in their PPP applications, and in certifications accompanying its receipt of federal PPP funds, that it was complying with, and would continue to comply with, applicable laws and regulations governing the award of PPP loans; and/or (2) made, or caused to be made, false representations in loan applications that the Defendants were eligible to receive such PPP loans. Moreover, Defendants' false claims caused the bank that their used to facilitate the loan on numerous occasions submit to the SBA, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained Defendants' false statement concerning Defendants' general eligibility for the PPP loans, on which the SBA relied and paid to the lenders. The bank relied on these false statements and passed them along to the government.

59.    The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if the omission renders those representations misleading. 41. 31 U.S.C.

COMPLAINT

§ 3729(a)(1)(A) and (B) of the FCA provide that:

(1) . . . any person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,

. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government . . .

31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

42. The scope of a false or fraudulent claim is to be broadly construed. As used in the FCA, a "claim"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

(i) is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I) provides or has provided any portion of the money or property requested or demanded; or

COMPLAINT

(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2) (2020).

60.    A person who violates the False Claims Act during the time period at issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages which the United States Government sustains because of the act of that person." 31 U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/pdf/2022-09928.pdf.

## VI.    JURISDICTION & VENUE

61.    This Court has subject matter jurisdiction over the Plaintiff's claims brought under the FCA, 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

62.    Plaintiff The United States of America is also located in the Central District of California. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are located in the Central District of California, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.[5]

63.    Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendant's acts that form the

---

[5]AFG operates in California. AFG has formed an operating entity in California and transacts business in California.

basis of this Complaint occurred in the Central District of California.

64.    Relator's claims and this Complaint are not based upon prior public disclosures of allegations or transactions in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from the news media. To the extent that there has been a public disclosure unknown to Relator, it is the "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily providing this information to the United States Government prior to filing this *qui tam* action.

## VII.   FIRST CAUSE OF ACTION

## FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729.(a)(1)(A-B))

65.    Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

66.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended.

67.    By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A).

68.    By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

69.    Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each and every violation arising from Defendants' unlawful conduct alleged herein.

//

//

//

//

//

//

//

//

//

//

//

//

COMPLAINT

1

## **PRAYER FOR RELIEF**

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against Defendants, as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3. Reasonable attorney fees, litigation expenses, and costs of suit

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 14, 2022                    THE LAW OFFICE OF HAKIMI & SHAHRIARI

By:    /s/ Peter Shahriari

PETER SHAHRIARI, ESQ.
Attorney for Plaintiff

COMPLAINT